UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:12-cv-00402-TWP-DKL |
| AT&T CORP., | ) ) ) |
| Defendant. | ) |

**ENTRY DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross Motions for Summary Judgment. Defendant AT&T Corp. ("AT&T") moves for summary judgment (Dkt. 41) on Plaintiff Equal Employment Opportunity Commission's ("EEOC") claim on behalf of Lupe Cardona ("Ms. Cardona"), a former AT&T employee. The EEOC moves for partial summary judgment (Dkt. 48) on AT&T's liability for two causes of action under the American with Disabilities Act ("ADA"): discriminatory discharge and failure to accommodate. The Court identifies multiple disputed issues of material fact barring summary judgment for either party. For the reasons set forth below, both motions are **DENIED**.

**I. BACKGROUND**

The following material facts are undisputed. Ms. Cardona began working for AT&T in 1984 as a Customer Sales & Service Specialist ("Specialist"). In 2001, she began working at the Indianapolis, Indiana call center. Specialists handle customer calls. AT&T values providing timely responses to customer calls and minimizing waiting periods is a primary customer service objective. Accordingly, Specialists' work schedules are determined so as to handle the anticipated number of customer calls during a given shift.

AT&T employs a progressive discipline process for absences on the following progression: verbal warning, written warning, final warning, and then, either termination or reinstatement of final warning. Attendance infractions more than one year old will not serve as a basis to progress an employee to the next stage of discipline. AT&T publishes its employee policies to an internal intranet, but does not maintain an employee handbook of its written policies.

In 2002, Ms. Cardona was diagnosed with Hepatitis C, a serious virus that attacks the liver. In October 2009, Ms. Cardona returned to her doctor to receive treatment for Hepatitis C. In January 2010, a liver biopsy revealed Ms. Cardona's Hepatitis C had progressed to grade 3, the second most severe grade. Her doctor recommended that she seek treatment to avoid liver damage and possible death. Ms. Cardona was specifically diagnosed with Hepatitis C-3a, which typically takes longer than 24 weeks to treat. The treatment is somewhat complicated, is temporary and may have severe side effects. On February 2, 2010, Ms. Cardona commenced treatment of alpha interferon and Ribavirin for Hepatitis C. As a result of her treatment, she utilized intermittent and then extended leave under the Family Medical Leave Act ("FMLA") throughout much of 2010.

On May 17, 2010, Ms. Cardona did not come into work. AT&T called and asked Ms. Cardona why she was not at work, to which Ms. Cardona replied that she thought it was still the weekend. A little later that same day, Ms. Cardona called AT&T to report that she needed to take FMLA leave for the day. In her call, she stated that she was sick, incoherent, and did not realize it was a Monday. On May 20, 2010, Ms. Cardona received a Final Written Warning for unsatisfactory attendance as the result of a March 19, 2010 absence when she missed eight hours of work as a result of her Hepatitis C treatment. The Final Written Warning stated, "**Attendance**

**is an essential function of your job. Satisfactory attendance is a condition of your employment!**" Dkt. 43-11 at 2 (emphasis in original).

On June 8, 2010, Manager Shalawn Francois ("Manager Francois") received an email informing her that Ms. Cardona had called in to use FMLA because of Ms. Cardona's Hepatitis C condition, and Ms. Cardona had inquired about the amount of FMLA leave she had left. Also on June 8, 2010, Manager Trudy Rowe ("Manager Rowe") emailed electronic audio files of Ms. Cardona's "call-ins" to Manager Francois and Employment Relations Manager ("ERM") Brenda Rutledge ("ERM Rutledge"). In response, ERM Rutledge emailed Managers Francois and Rowe that:

> [o]ne thing we want to ensure is that any time [Ms. Cardona] tells us that her medical condition is keeping her from performing her job, we are directing her to [AT&T's Integrated Disability Service Center ("IDSC")] to request job accommodations . . . from the voicemails that [Manager Rowe] sent over, [Ms. Cardona] is indicating that her medication is affecting her.

Dkt. 50-33 at 1–2. ERM Rutledge explained in deposition that she meant that, "if [Ms. Cardona] stated that she had a medical condition that was keeping her from doing her job, then it was her right to see if she could request a job accommodation to help her." Dkt. 50-8 at 5, 25:2–7. ERM Rutledge did not have a specific accommodation in mind and could not recall whether she followed up on this subject. Also on June 8, 2010, ERM Rutledge informed AT&T Labor Specialist Mary Ellen that Ms. Cardona appeared to suffer from a condition, for which she takes medication, which sometimes affects her job performance. ERM Rutledge described it as a disability issue, but did not clarify what she meant by disability.

On June 16, 2010, Ms. Cardona had a disciplinary meeting with Manager Terri Basso ("Manager Basso"), during which she stated that she has Hepatitis C and her medications were affecting her ability to function at work. Ms. Cardona further stated that a cure might take six

3

months.  Manager Basso told Ms. Cardona, "[i]f the medication is causing you not to perform your job you must contact IDSC and speak to a case manager about job accommodations." Dkt. 50-12 at 2.  Ms. Cardona asked what job accommodations would mean, and Manager Basso replied, "[t]his is what you can discuss with them for job accommodations and I give you time right now. . . . They may be able to help[,] I'm going to give you the number." Dkt. 50-12 at 2.  Manager Basso then gave Ms. Cardona time to contact IDSC.

IDSC is operated by Sedgwick Claims Management Services, Inc., and handles Short Term Disability ("STD") claims and the job accommodation request process for AT&T.  The job accommodation process includes conferring with employees regarding their requests for accommodation, evaluating any medical substantiation for such accommodation requests, and tracking information related to accommodation requests.  The STD policy allows for an employee to receive wage replacement benefits if he or she is absent from work more than seven consecutive days and has a certified disability that does not qualify for Worker's Compensation coverage.  Ms. Cardona called IDSC on June 16, 2010 and spoke with a customer service agent.  Ms. Cardona was advised that as an employee with 25 years of service, she was eligible to receive up to 52 weeks of STD benefits with full pay.  The agent then processed Ms. Cardona according to AT&T's STD plan.

Ms. Cardona did not report to work on June 17, 2010, and remained absent until October 25, 2010, under the STD policy and using her remaining FMLA leave.  Also on June 17, 2010, Manager Basso received notification from IDSC that Ms. Cardona had made a claim for STD benefits.  Also on that date, Manager Rowe forwarded the disciplinary minutes from June 16, 2010, to ERM Rutledge along with the note that Ms. Cardona had contacted IDSC and left work

on FMLA. ERM Rutledge responded that "it would not surprise me if [Ms. Cardona] went into a disability which may be what she needs." Dkt. 50-26 at 1.

On July 2, 2010, Ms. Cardona exhausted her FMLA leave available in 2010. Ms. Cardona's FLMA leave was statutorily protected and did not count against Ms. Cardona. However, AT&T did charge her continued absence during the remainder of her STD period as unexcused or unprotected. At the latest, Ms. Cardona was made aware that her remaining STD period was chargeable on July 23, 2010. On July 28, 2010, ERM Rutledge stated to Manager Aretha Smith that "[e]ither way, when she returns, part of her disability will not be protected and that can progress her through the discipline process." Dkt. 50-41 at 1.

On July 14, 2010, Ms. Cardona's application for STD benefits was initially denied for inadequate medical documentation. Ms. Cardona timely appealed and her benefits were eventually approved on September 20, 2010, for the period of June 24, 2010 through October 24, 2010. An IDSC record from July 19, 2010, indicates that Ms. Cardona had successfully completed 24 weeks of her treatment, though she had not kept appointments, and the plan was to finish her 36 weeks of treatment. On July 21, 2010, Ms. Cardona's physician spoke with IDSC. He provided details of therapy dates, side effects, and how the side effects had impaired Ms. Cardona's ability to do her job. In September 2010, prior to the approval of Ms. Cardona's STD benefits, Manager Francois had prepared a "return to work" letter to Ms. Cardona and recommended she be terminated for her extended absence.

Ms. Cardona completed her Hepatitis C treatment at the end of September 2010 and her physician released her to return to full-time employment beginning October 25, 2010. On October 22, 2010, Ms. Cardona confirmed with AT&T that she would be returning to work on

5

October, 25, 2010. On October 27, 2010, Ms. Cardona was called into a disciplinary meeting at which she was terminated for excessive absences.

During Ms. Cardona's absence from June 17, 2010 through October 22, 2010, AT&T did not hire anyone to fill-in for Ms. Cardona, nor did it require other employees to work overtime specifically to make up for time Ms. Cardona failed to work. Any calls that Ms. Cardona would have answered were handled by other Specialists at the call center.

## II.  LEGAL STANDARD

Summary judgment is only appropriate by the terms of Rule 56(c) where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## III.  DISCUSSION

The EEOC brings this action seeking declaratory and monetary relief for Ms. Cardona, as well as injunctive relief under the ADA. It alleges AT&T committed a discriminatory discharge

and failed to accommodate Ms. Cardona. The ADA prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a). In order to make out a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) that she suffers from a disability as defined in the statutes; (2) that she is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action as a result of her disability. *Jackson v. City of Chi.*, 414 F.3d 806, 810 (7th Cir. 2005).

### A.     AT&T's Motion for Summary Judgment

AT&T makes three arguments on summary judgment including, first, that Ms. Cardona was terminated because of unsatisfactory attendance and not a medical condition. Second, that Ms. Cardona was not qualified to perform the essential functions of her job, so it was not required to accommodate her. Third, that even if the ADA protects Ms. Cardona, AT&T was not required to excuse Ms. Cardona's failure to perform her job for such an extended period of time.

### B.     EEOC's Motion for Summary Judgment

The EEOC argues on summary judgment that AT&T failed to provide Ms. Cardona a reasonable accommodation, AT&T has not established that providing Ms. Cardona with protected time off resulted in an undue hardship, and AT&T intentionally discriminated against Ms. Cardona when it terminated her.

### C.     Material Facts in Dispute

The Court finds that there are at least three genuine issues of material fact that preclude summary judgment for either party. First, the parties dispute—and the Court cannot determine as a matter of law—whether regular attendance was an essential function of Ms. Cardona's employment. If it was, she would not be a "qualified individual" under the ADA entitled to

reasonable accommodation. The Seventh Circuit has stated that the "employer, not a court, determines what functions are essential, and we will not second guess that decision." *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). AT&T contends that regular attendance was an essential function of Ms. Cardona's position of Specialist, yet the only evidence AT&T has provided on this fact is the Final Written Warning given to Ms. Cardona and Area Manager Kimberly Williams's testimony. It further cites Ms. Cardona's deposition testimony stating that she understood attendance is essential. However, the job description for the Specialist position is silent as to whether attendance is an essential job function. The EEOC also argues that AT&T's policy of providing 22 formal "leave of absence" plans belies its contention that regular attendance is an essential function. Moreover, regular attendance is important in any job, and to settle this dispute as a matter of law under the ADA is beyond the reach of summary judgment. The Court finds that a reasonable jury could interpret this evidence to conclude that regular attendance either was or was not an essential function of Ms. Cardona's position.

Second, the facts are disputed as to whether Ms. Cardona put AT&T on notice that she was seeking job accommodations. The ADA's reasonable accommodation requirement applies only to "known" disabilities. 42 U.S.C. § 12112(b)(5)(A). Thus, "a plaintiff must normally request an accommodation before liability under the ADA attaches." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012). "Once the employer has been put on notice, the employer must take reasonable steps to accommodate the employee's disability." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013). The Seventh Circuit has stated that both employer and employee bear responsibility for determining reasonable accommodations. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996). Here, although it is undisputed that Ms. Cardona never formally requested a "reasonable accommodation" or "job

accommodation" in those terms, she was told by superiors that job accommodations would be appropriate and she should contact IDSC. Moreover, ERM Rutledge told Managers Francois and Rowe that they should direct Ms. Cardona to seek job accommodations. That Ms. Cardona then contacted IDSC due to her condition raises a genuine issue of material fact barring summary judgment. A reasonable jury could find that Ms. Cardona's actions put AT&T on notice that she required a job accommodation, as well as that AT&T recognized that need.

Third, the parties dispute the length of leave Ms. Cardona requested. The EEOC contends that AT&T was on notice that Ms. Cardona's leave would be no more than 36 weeks—the length of Hepatitis C treatment. AT&T contends that Ms. Cardona never specified the amount of time she would be absent and simply stopped coming to work. There is ample evidence in the record creating a disputed issue of fact, the determination of which is material to whether such an accommodation—if required—is reasonable. Similarly, it is disputed as to whether Ms. Cardona's June 2010 through October 2010 absence created an undue hardship thereby making it an unreasonable accommodation. These facts must be determined by the trier of fact.

Because these genuine issues of material fact exist, the Court cannot grant summary judgment for either party. The claims must proceed to trial by jury.

## IV. **CONCLUSION**

For the reasons stated above, AT&T's Motion for Summary Judgment (Dkt. 41) is **DENIED**. Likewise, the EEOC's Motion for Partial Summary Judgment (Dkt. 48) is **DENIED**.

SO ORDERED.

Date: 11/20/2013 _____

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

9

DISTRIBUTION:

Carl Felix Miller
UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
felix.miller@eeoc.gov

Patrick J. Holman
UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
patrick.holman@eeoc.gov

C. Geoffrey Weirich
PAUL HASTINGS, LLP
geoffweirich@paulhastings.com

Kenneth W. Gage
PAUL HASTINGS, LLP
kennethgage@paulhastings.com

N. Katie Manley
PAUL HASTINGS, LLP
katiemanley@paulhastings.com